[Civ. No. 45886. First Dist., Div. Four. Nov. 5, 1979.]

DONALD W. TOSH et al., Plaintiffs and Respondents, v.
CALIFORNIA COASTAL COMMISSION et al.,
Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, R. H. Connett, Assistant Attor-

ney General, Roderick Walston and Richard C. Jacobs, Deputy Attorneys General, for Defendants and Appellants.

Panetta, Murphy & Thompson and Allan P. Murphy for Plaintiffs and Respondents.

OPINION

CALDECOTT, P. J.—In February 1977, Donald W. Tosh and Dean L. Gowdy (respondents) filed an application with the Central Coast Regional Commission for exemption from the permit requirements of the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) for the subdivision of their land into four parcels, including construction of a water system and storage tanks. Respondents' application was denied on April 11, 1977, on the ground that petitioners had not acquired a vested right prior to the effective date of the act. Respondents appealed to the California Coastal Commission which rejected respondents' appeal on the ground respondents had not presented a substantial issue.

On July 29, 1977, respondents filed a petition for writ of mandate in the Monterey County Superior Court, naming the California Coastal Commission and the Central Coast Regional Commission as defendants (hereinafter appellants).

On September 15, 1978, the court filed an order directing appellants to find respondents exempt from the permit requirements of the California Coastal Act of 1976. On October 3, 1978, the writ of mandate was filed. The appeal is from the judgment.

In 1969, respondents purchased approximately 154 acres of unimproved real property in the Big Sur area. Respondents applied for and received tentative map approval to divide the property into four lots from the Monterey County Planning Commission on April 8, 1976.[1] Approval was given subject to six conditions, but by stipulation of the parties, only two of the six conditions remain at issue. The two condi-

---

[1] Because respondents were seeking to divide their property into four parcels (a "minor subdivision"), they were not required to file a final subdivision map. Pursuant to Government Code section 66428 and Monterey County Ordinance No. 1713, section 9, respondents were obligated to file a tentative map before receiving approval of a parcel map.

tions require respondents, prior to parcel map approval, to obtain a permit for the water system from the Monterey County Health Department and to convey a scenic easement to the County of Monterey.

Between April 8, 1976, the date of the tentative map approval, and January 1, 1977, the effective date of the California Coastal Act of 1976, respondents attempted to satisfy the conditions. By January 1, 1977, respondents had substantially completed and installed the water system and storage tanks. Although respondents applied for a water permit from the health department on December 5, 1976, the permit was not issued until February 16, 1977.

Respondents submitted the scenic easement deed to the planning department on December 13, 1976, but it was refused with a request that modifications be made. On December 22, 1976, respondents resubmitted the deed with the requested modifications. On January 4, 1977, the Monterey County Board of Supervisors accepted the scenic easement deed.

On or about February 16, 1977, the Monterey County Board of Supervisors approved the parcel map.

I

Respondents contend that by virtue of incurring substantial expenditures and liabilities in reliance upon the tentative map, they have acquired a vested right to subdivide their land.[2] Respondents therefore assert that the regional and state coastal commissions erred in denying respondents an exemption from the permit requirements of the California Coastal Act of 1976. Public Resources Code section 30608 states in pertinent part: "(a) No person who has obtained a vested right in a development prior to the effective date of this division . . . shall be required to secure approval for the development pursuant to this division; . . ."

The doctrine of vested rights protects property owners from changes in zoning or other land use regulations which occur before the completion of the owner's development project. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [56

[2]Respondents do not claim a vested right to construct buildings on the four parcels, but only to subdivide their property into four parcels.

Cal.Rptr. 672, 423 P.2d 824].) A vested right to complete the project arises only after the property owner has performed substantial work, incurred substantial liability and shown good faith reliance upon a governmental permit. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].)

The statutory exemption of section 30608 is written in broader language than its predecessor, Public Resources Code section 27404 of the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq.). Section 27404 provided: "If, prior to November 8, 1972, any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; providing that no substantial changes may be made in any such development, except in accordance with the provisions of this division. Any such person shall be deemed to have such vested rights if, prior to November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor. Expenses incurred in obtaining the enactment of an ordinance in relation to the particular development or the issuance of a permit shall not be deemed liabilities for work or material." Because the requirement of a building permit is specifically required by section 27404 and not by section 30608, respondents contend that under section 30608 a vested right may occur prior to the granting of a building permit.

While construing Public Resources Code section 27404, several courts acknowledged that "a building permit may no longer be the *sine qua non* of a vested right if preliminary public permits are sufficiently definitive and manifest all final discretionary approvals required for completion of specific buildings." (*Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965, 975, fn. 5 [137 Cal.Rptr. 699]; see *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 793-794; *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 544 [122 Cal.Rptr. 315].) In *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785 at pages 793-794, the Coastal Zone Conservation Commission conceded that in certain circumstances a conditional use permit may satisfy the requirement for acquisition of a vested right.

In determining which governmental permits other than a building permit may possibly afford the developer a vested right, some courts have applied the final discretionary approval test while others have disregarded whether the final act is discretionary or ministerial and simply looked to the final governmental approval.

In determining whether the developer was exempt from the permit requirements of the California Coastal Zone Conservation Act of 1972, the court in *Oceanic California, Inc. v. North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57 [133 Cal.Rptr. 664], cited with approval the trial court's conclusion of law which states: "'With respect to Units 34B and 35D, Oceanic had approval of a tentative subdivision map prior to November 8, 1972, but that does not create vested rights since no final map approval was ever obtained and no substantial reliance upon tentative map approval has been shown. With respect to Unit 34A, since Oceanic had not obtained a final map approval or other *final governmental approvals* prior to November 8, 1972, Oceanic does not qualify for vested rights with respect to Unit 34A....'" (*Id.*, at p. 75; italics added.) The court made no determination whether approval of the final map was discretionary. It simply held that had a final map been approved a vested right would have been acquired.

In *Aries Dev. Co. v. California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, the court applied the final discretionary approval test in determining that the developer had not acquired a vested right to develop his property.

Respondents urge us to apply the final discretionary approval test in our determination of whether they have a vested right to subdivide. Relying on *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 648 [150 Cal.Rptr. 242, 586 P.2d 556], and *Great Western Sav. & Loan Assn. v. City of Los Angeles* (1973) 31 Cal.App.3d 403 [107 Cal.Rptr. 359], which hold that the approval of a final subdivision map is ministerial, respondents assert that the final discretionary act in allowing a developer to subdivide is the tentative map approval. Here there were two conditions that had to be satisfied to complete the tentative map approval. First, a scenic easement had to be conveyed to the county over those portions of the property where the slope is more than 30 percent and the easement deed to be submitted to and approved by the director of planning. The deed was not approved or accepted prior to January 1, 1977. The respondents contended and the trial court

found the approval was a ministerial act. The record does not support this finding.

The evidence shows that in July 1976, respondents commenced the process of preparing an acceptable deed. Conferences were held with the planning department to work out the problems relating to the easement. Finally, on December 13, 1976, a deed was submitted to the planning department but it was returned by the department and modifications were required. A modified deed was then submitted on December 22, 1976. The director of planning apparently never approved the deed; in any event, there is no evidence he did approve it prior to January 1, 1977. As it took almost six months of negotiations to draft an acceptable deed, there was some question as to just what land was to be included, it cannot be said that approval was a ministerial act. The tentative map was approved subject to compliance with the conditions. There is no evidence that this condition was approved prior to January 1, 1977, thus the tentative map was not approved prior to effective date and a vested right was not obtained.

The second condition requires the obtaining of a permit for the water system from the health department. The trial court found that the issuance of this permit, after the necessary information was filed, was a ministerial act, and there is evidence to support this finding.

## II

Appellants assert that respondents constructed the water system and storage tanks without securing a building permit and other governmental approval required by Monterey County Ordinance Nos. 2120 and 911, respectively. Since the water system and storage tanks were unlawfully constructed, appellants contend that respondents may not receive an exemption from the permit requirements of the California Coastal Act of 1976.

Prior to January 1, 1977, respondents performed approximately 80 percent of the work necessary to complete construction of the water system and expended approximately $18,000 toward the water system. Respondents admit they have never applied for or received a building permit to construct the water system.

Monterey County Ordinance No. 911 states in pertinent part: "Water facilities, including wells and storage tanks, serving three or four do-

mestic users are permitted in any zoning district upon approval by the Director of Planning as to the location, access, landscaping and color of storage tanks."

Monterey County Ordinance No. 2120 incorporates by reference the provisions of the 1973 Uniform Building Code. Ordinance No. 2120 provides that "no person shall do any of the following without first obtaining from the Building Official a permit therefor:...All work specified in Section 301(a) of said Uniform Building Code...." Section 301(a) of the 1973 Uniform Building Code provides that "No person, ...shall erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure in the city, or cause the same to be done, without first obtaining a separate building permit for each such building or structure from the Building Official."

Dispute arises between parties whether water tanks are buildings or structures within the meaning of ordinance No. 2120. Appellants assert, and we agree, that water tanks are subject to the building permit requirements of ordinance No. 2120. The court in *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683 [234 P.2d 972], interpreted a local nonconforming use ordinance to include water tanks. "[T]here can be no doubt that the four new tanks are 'buildings' within the meaning of the ordinance." (*Id.*, at p. 689.) The county building department has interpreted the ordinance as applying to water storage tanks.

Respondents' argument that the water system was neither constructed nor erected within the meaning of ordinance No. 2120 is meritless. Certainly, "laying 4,800 feet of 2-inch galvanized pipe in a trench, connecting chlorinators, valves, fittings and filters on the system; and installing five (5) metal water tanks totalling 25,000 gallons capacity" is construction within the meaning of ordinance No. 2120.

The trial court erred in concluding that Monterey County Ordinance No. 2120 does not require a written permit to erect water tanks.[3] Without a building permit, respondents failed to acquire a vested right and may not avail themselves of the exemption provisions of the California Coastal Act of 1976.[4]

---

[3]From a review of the findings of fact and conclusions of law, it appears that the trial court found implied approval by the governmental officials for construction of the water system as there was never any objection made.

[4]In light of our conclusion, it is unnecessary to determine whether respondents complied with ordinance No. 911. Even if the provisions of ordinance No. 911 were

## III

■ Respondents raise on this appeal the doctrine of estoppel. The doctrine was not raised in respondents' petition for writ of mandate, nor was it an affirmative defense raised in the answer. Though respondents as prevailing party at trial were instructed by the court to prepare the findings of fact and judgment they did not include any findings to support the doctrine. The respondents contend that the appellants are estopped to claim that the water tanks were illegally constructed because a building permit had not been obtained. The respondents' claim, in this case, is based on facts and therefore findings of fact are necessary to support it. The claim of estoppel must fail because it is raised for the first time on appeal and because there are no findings of fact to support it.

The judgment is reversed.

Rattigan, J., and Poché, J., concurred.

A petition for a rehearing was denied December 5, 1979, and respondents' petition for a hearing by the Supreme Court was denied January 3, 1980.

---

satisfied, the construction of the water system remains illegal, pursuant to ordinance No. 2120.