[L.A. No. 31777. Dec. 6, 1984.]

PARDEE CONSTRUCTION COMPANY, Plaintiff and Appellant, v.
CITY OF CAMARILLO et al., Defendants and Respondents.

COUNSEL

Sandler & Rosen and Charles L. Birke for Plaintiff and Appellant.

Royal M. Sorensen and Colin Lennard, City Attorneys, Burke, Williams & Sorensen and Katherine E. Stone for Defendants and Respondents.

OPINION

**KAUS, J.**—Pardee Construction Company (Pardee) appeals from an order of the superior court denying Pardee's request for a "restraining order" to enjoin the City of Camarillo (the city) from applying a growth control ordinance (Camarillo Mun. Code, ch. 1, tit. 20, §§ 20.04-20.13) to Pardee's

property.[1] The question is whether application of the ordinance is precluded by an earlier consent judgment entered into between Pardee and the city.

## I

In the spring of 1970, Pardee purchased about 1,150 acres in an unincorporated area of Ventura County, adjacent to the city. In the fall of 1970 the city approved Pardee's master plan for development of the property, annexed the property (Ord. No. 182) and zoned the property to permit development in accordance with the master plan (Ord. No. 178). The master plan, in Pardee's words, "(a) was a comprehensive plan for the development of the entire 1150 acres . . . (b) described in great detail the land use . . . and indicated the number of acres to be allocated to each type of development, the number of residential units . . . the other uses . . . such as parks, open spaces, schools, commercial and industrial, and the precise location of each such land use; (c) included a proposed zoning plan . . . (d) contained a generalized development proposal for the orderly and phased development of the entire 1150 acres. . . ." The plan contained no time schedule, nor did it indicate the rate of development.

Pardee started to develop the property and built on it. As will be seen, progress was not without controversy. The proposed development plans for land use were subjected to what Pardee later described as "unreasonable conditions." Nevertheless, by the spring of 1973, the city had approved tentative and final subdivision maps for two tracts, Nos. 2189 and 2228, consisting of 71 acres and 325 residential lots, and construction had begun.

In the summer of 1973 the city adopted ordinances which contemplated changing the land use to reduce density—specifically, to provide that each residential unit occupy five acres. In 1974, Pardee brought suit praying for declaratory relief, damages, and an injunction. It also claimed inverse condemnation. The injunction and inverse condemnation causes of action were later dismissed by stipulation.

The focus of the complaint, contained in count I, was the city's proposed modification of land use to reduce density. It was alleged that the proposed new ordinance violated Pardee's vested right to proceed with the develop-

---

[1]The minute order dated August 29, 1981, states: "The above entitled matter having been heretofore heard and submitted to the court for consideration and decision; the court now orders the restraining order denied."

The proceedings which led to the order were instituted by the issuance of an order directing the city to show cause why it should not be "enjoined, restrained, and prohibited" from applying its ordinance to Pardee. No judgment was entered, but an order refusing to grant an injunction is appealable (Code Civ. Proc., § 904.1, subd. (f)), and the parties raise no question as to the appropriateness of the appeal.

ment of the property in accord with Ordinance No. 178—the zoning as promised at the time of annexation and adoption of the master plan. Count IV complained of the problems Pardee was having in getting tentative tract maps approved and of the "arbitrary and capricious actions" on the part of the city in approving Residential Planned Development (RPD) permits,[2] in that the city was imposing frustrating new conditions, such as increase in footage of lots, houses, and yards, drainage and landscaping requirements, and contributions for road improvements. Pardee requested that the city be restrained from "abusing [its] administrative and legislative powers" to frustrate Pardee's plans to develop the property.

On July 11, 1974, Pardee and the city stipulated to a judgment which recited in paragraph 6 that because Pardee had incurred substantial expenses and obligations in reliance on the city's approval of its master plan, its assurances that Pardee could develop the property substantially in accordance with the plan, and its enactment of the zoning ordinance to permit the development, Pardee "has a vested right to proceed with the development of all of the Property in the manner set out" in the master plan, as modified by the judgment,[3] and that the city is "estopped from adopting zoning or permanent land use regulation for the Property which is in any manner inconsistent with" the master plan and the zoning ordinance which had been adopted in accordance therewith except as expressly provided in the judgment.[4]

The judgment provided in paragraph 19 that it did not preclude the city "in the proper exercise of its police power from adopting any ordinance which will be applicable to Pardee and the property so long as such ordinance is not inconsistent with the provisions of this judgment . . . . It is the intent and purpose of this section that the City not be precluded from the exercise of its broad police power relative to general subject matter which

---

[2]RPD permits or applications are *zoning* permits, not *building* permits, and, as we later note, were an important part of the consent judgment which resulted from the lawsuit.

[3]Paragraph 7 of the judgment modified the master plan to resolve the complaints raised in count IV, discussed above, and provided for concessions to both parties. For example, minimum lot size was increased to accommodate the city, but Pardee was accommodated to permit rezoning of parcels from park to commercial-recreational use.

[4]Paragraph 6 reads in its entirety: "That by reason of the justified and good faith reliance of plaintiff as hereinabove set forth, plaintiff has a vested right to proceed with the development of all of the Property in the manner set out in Plaintiff's Master Plan as modified by this Judgment, and CITY, its agents, officers and employees, are estopped from adopting zoning or permanent land use regulation for the Property, which is in any manner inconsistent with Plaintiff's Master Plan and the zoning provided by Ordinance No. 178, except as herein expressly provided."

may be applicable to all builders and developers alike throughout the City."[5]

Other pertinent paragraphs of the consent judgment confirm that the focus of Pardee's complaint and the judgment that followed was the dispute over land use and zoning, not the sequence and certainly not the timing of development. As noted earlier, paragraph 7 provided for modification of the master plan regarding residential development. Paragraphs 8 and 9 then provided that the land use element of the city's General Plan be made to conform to Ordinance No. 178 and that, pending amendment to the land use element of the General Plan, the city could not withhold conditional approval of any tentative tract map or RPD application solely on the ground that it did not conform to the General Plan, so long as it conformed to Ordinance No. 178. Paragraphs 10 and 11 provided for conveyance of more open space. Paragraphs 12, 13, and 14 provided for mobilehome park, industrial tract, and school sites. Significantly, as to the mobilehome park, the judgment provided that development of the park could proceed, "subject only to plaintiff's filing its application for a conditional use permit and its compliance with the development standards and individual site standards set forth in sections . . . of the Municipal Code."

Paragraph 15, an extensive paragraph dealing with the issuance of RPD permits, was clearly intended to alleviate the problems that had been described in count IV of the complaint. It provided that Pardee comply with all applicable provisions of the municipal code, city ordinances, and all other applicable requirements of law and that the city "shall not impose, except by duly enacted ordinance, any conditions or requirements for the issuance of permits for RPD developments"—except certain conditions set forth in an attached exhibit. The paragraph also precluded the city's planning commission from reviewing, changing, or modifying requirements or design criteria after approval by a city agency (i.e., city engineer or director of public works) having jurisdiction over the subject matter. Paragraph 16 dealt with tract map applications and RPD permits: it outlined the procedure

---

[5]Paragraph 19 reads: "Nothing herein contained shall preclude CITY in the proper exercise of its police power from adopting any ordinance which will be applicable to PARDEE and the Property so long as such ordinance is not inconsistent with the provisions of this judgment which allows PARDEE to develop in accordance with the zoning and Master Plan submitted. It is the intent and purpose of this section that the CITY not be precluded from the exercise of its broad police power relative to general subject matter which may be applicable to all builders and developers alike throughout the City. [¶] CITY, at any time after 15 years from the date hereof may amend the zoning of the Property or any portion thereof in the proper exercise of the police power and if required in the public interest, safety, health, morals and general welfare. [¶] The CITY, upon determination that a zone change is needed upon any portion of the Property and the failure of the parties to agree upon such zone change, may make application to the Court for modification of this Judgment to allow such rezoning upon proper showing of the need therefor."

for their processing, an important feature of which was the provision that, once an RPD permit was issued in compliance with all legal requirements, no further discretionary approval was necessary, although the developer still had to obtain a zoning clearance from the planning department and, of course, the requisite building permits. Finally, paragraph 17 provided for the issuance of use, building, and other permits upon request and compliance with "all legal requirements."

It is noted that the 1974 stipulated judgment resembled the 1970 master plan in its failure to contain any reference to a time schedule or rate of development.

In June 1981, the voters of the city adopted an initiative measure establishing a residential development control system (Growth Control Ordinance), which the city then enacted as sections 20.04 and 20.13 of its municipal code. The ordinance provided that from 1981 through 1995 the number of new residential units which could be built in the city was limited to 700 units in 1981 and 400 thereafter, subject to a 10 percent variance if authorized by the city council. Allocations for each year were to be established by the council after recommendation by a residential development control board on the basis of stated criteria.[6]

On July 7, 1981, a month after the initiative passed, in the same action in which the consent judgment was entered, Pardee filed a request for an order to show cause why application of the Growth Control Ordinance

---

[6]The Growth Control Ordinance contained the following general provisions:

Section 20.04 set forth a declaration of purpose, stating that it was the intent of the people of the city to achieve a steady growth in order to properly provide new facilities and services, protect open space, and accomplish similar purposes.

The ordinance applied to all residential development and imposed a "Residential Development Control System" for the city, through December 31, 1995. The ordinance set a limit on the number of dwelling units which could be built in the entire city, per year, of 700 units in 1981 and 400 units in each year thereafter, but authorized the city council to modify that number by 10 percent, more or less, in any year. (§ 20.07.)

It exempted certain specified types of residential developments from its provisions (§ 20.05) and provided that no building permit for nonexempted projects could be issued until a development allotment for such project had been granted. (§ 20.08.)

A "Residential Development Evaluation Board" would consider the applications for allotments. Each application would be examined for effects on water, fire, and other services; whether it had already received tentative tract map approval; and quality and environmental factors. (§ 20.09A.) The development application would then be rated on a point system, and the evaluation board would hold a public hearing on the point assignments. The evaluation board would then report its evaluation and decisions to the city council (§ 20.09) which would then consider the recommendations and rankings at a public hearing and award allotments from among the number allowable for that year. (§ 20.10.) If a developer did not receive a certain minimum number of points, he would be eliminated from consideration. (§ 20.10.) The city council was authorized to establish the maximum number of allotments that could be issued to a single developer in any one year.

should not be restrained as to Pardee. It alleged that the judgment established that it had a vested right to proceed with development according to its master plan and that the new ordinance could not, therefore, be applied to the development of the property that was the subject of the judgment.

On August 7, 1981, the parties filed a stipulation as to the issues to be decided on the order to show cause. These were: (1) the applicability of the Growth Control Ordinance to Pardee's property which was subject to the judgment of July 11, 1974; and (2) the alleged violation of a vested right granted to Pardee by that judgment. The validity of the Growth Control Ordinance was not put in issue.[7]

The city's position in response to Pardee's request for an order to show cause was that the ordinance did not violate any vested right, but affected only the timing of development, based on the criteria established in the ordinance; and, further, that the new ordinance came under the police power of the city, which had been specifically excluded from the operation of the judgment. A declaration by Matthew A. Boden, director of planning and community development for the city, stated that at no time previously had Pardee contended that the 1974 judgment prevented control of the rate of growth by the city.

The trial court, after a hearing on declarations, denied the application without opinion.

## II

Pardee contends that application of the Growth Control Ordinance to its property deprives it of the vested right to develop the property, a right granted by the consent judgment.

We first examine the judgment, keeping in mind that a consent judgment is in the nature of a contract (*Stevens* v. *Stevens* (1968) 268 Cal.App.2d 426, 435 [74 Cal.Rptr. 54]), subject to interpretation and construction. It " ' ' "is binding only as to the matter consented to by the stipulation" ' ' . . . is confined only to issues within the stipulation . . . and does not cover matters not in the stipulation." (*Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516], quoting *Larsen* v. *Beckman* (1969) 276 Cal.App.2d 185, 191.)

The judgment here resulted from the dispute over the new zoning ordinance contemplated by the city which differed from that promised and

---

[7]Pardee has challenged the validity and constitutionality of the Growth Control Ordinance on its face and as applied in a separate action, pending in the Ventura County Superior Court. No such issue is raised in this proceeding.

enacted by the city upon the approval of the master plan.[8] As noted, the rate of development was in no way at issue in the litigation.

The judgment insured for Pardee the right to development of the property under a specific zoning ordinance. It did not set the timing or sequence of the development. ■ ■ ■ ■ It did not exempt the development from compliance with the applicable municipal code and ordinances.[9] ■ Further, by its express terms, the judgment reserves the police power to the city, providing that the city may adopt ordinances within the police power applicable to Pardee, so long as they are not inconsistent with the judgment.

The events giving rise to the judgment and the language of the judgment itself persuade us that, at most, Pardee was granted the right to develop its property in accord with the master plan and the zoning provided by Ordinance No. 178 and that the city, in turn, was estopped from adopting *zoning or land use regulations* for the property which were in any manner inconsistent with the plan or Ordinance No. 178.

The ordinance under attack is not in the least inconsistent with the consent judgment. It does not change the zoning provided by Ordinance No. 178; nor does it change any of the provisions of the master plan as modified by the judgment. It imposes no conditions, limitations, or requirements on Pardee that are not "applicable to all builders and developers alike throughout the City," as stated in paragraph 19 of the judgment. The procedures for obtaining a residential development allotment and a building permit apply to Pardee as they do to any other developer.

The Growth Control Ordinance is essentially a regulation of the time, or rate, of development. It regulates the rate of development by limiting the number of dwelling units that may be built per year. It allocates the number of units among developers according to engineering and aesthetic criteria that, on their face, do not deprive Pardee of its right to build the units contemplated by the consent judgment. It does not change zoning and does not alter the master plan and therefore does not restrict or prevent Pardee

---

[8]Indeed, the master plan recited that the report and the included development plans "represent a request for zoning." The master plan therefore described the proposed development only in general terms; no specific, identifiable buildings were shown.

[9]As a general rule, a developer must comply with the laws in effect *at the time when a building permit is to be issued.* (*Hazon-Iny Development, Inc.* v. *City of Santa Monica* (1982) 128 Cal.App.3d 1, 10-11 [179 Cal.Rptr. 860].) There is nothing in the judgment to indicate that the general rule was to be inapplicable. On the contrary, the judgment expressly provides that Pardee can obtain *its tentative tract maps and other permits* after "compliance *with all legal requirements* in order that the development of the Property may be completed in accordance with this Judgment." (Italics added.)

from its development of the property in accordance with the master plan and the zoning provided by Ordinance No. 178.

Pardee argues that, even if no facial inconsistency between the judgment and the Growth Control Ordinance appears, the ordinance is nevertheless inconsistent because, potentially, Pardee could be denied even one permit under the new ordinance. Pardee notes that the procedure for allocation of permits is based upon evaluations which take into consideration criteria that allow reevaluation of the merits of the project. Therefore, argues Pardee, its specifications regarding water and sewage capacities, and school and traffic capacities, for example—already approved under the master plan—will now have to compete with specifications of other builders so that, conceivably, Pardee may lose out to the extent of not getting a single permit. In essence, it urges that the city should not be permitted to evaluate Pardee's projects competitively for the purpose of deciding whether a permit should be granted. That argument ignores that portion of the judgment expressly reserving the police power to the city. The intent of that reservation was to insure that the city retained the power to adopt and apply with an even hand ordinances that "may be applicable to all builders and developers alike throughout the city." As Pardee will compete with other builders, so will other builders have to compete with Pardee. Nothing in the judgment gives Pardee a monopoly on development in Camarillo.

Since it is our view that the Growth Control Ordinance did not infringe on any of Pardee's rights under the 1974 judgment, it is irrelevant whether in some other context, they might be deemed "vested."

The order is affirmed.

Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.

**MOSK, J.**—I dissent.

The majority's interpretations of the consent judgment and the growth control ordinance are not merely unduly narrow, they are erroneous. As a consequence, Pardee is left without recourse to correct the blatant violation of its vested right to develop property in the manner guaranteed by the city. Indeed, after reviewing the conduct of the city, and the majority's approval thereof, one wonders whatever happened to vested property rights. If parties cannot rely on a stipulated judgment, there is no certainty in any document.

I. *The Inconsistency between the Ordinance and the Judgment.*

The majority come to the conclusion that the growth ordinance does not run afoul of the stipulated judgment. They arrive at this strained interpre-

tation by picking and choosing among the provisions of each to discern any compatible language. Essentially, the majority decide that the growth ordinance regulates only the timing of development, while the judgment relates exclusively to zoning. However, a more objective examination of both documents reveals obvious inconsistencies between the ordinance and the judgment.

The ordinance discloses on its face a purpose to affect more than the timing of development. Section 20.04 (f) declares that "the City must be able to control the rate, distribution, *quality and economic level of proposed development* . . . ." (Italics added.) To achieve this control, the ordinance sets up a system whereby each developer must withstand extensive evaluation in order to obtain the allotments necessary for the issuance of building permits. (§§ 20.09 & 20.10.) The evaluation procedure is decidedly substantive. Developers must compete in such areas as the capacity of proposed water, sewer and drainage systems, the ability of the fire department to serve the new area without building a new station, the "design quality" of the proposed buildings in terms of size, height, color, and location, and the amount of open space provided in the plan. (§§ 20.09A & 20.09B.) If a developer does not obtain a certain number of "points," awarded by the residential development evaluation board, that developer will not be allowed a single allotment. Thus, based on the board's qualitative evaluation, a developer's project could be completely frozen until 1995. With inflation pushing labor and material costs higher each year, it is naive to conceive that such a substantive delay is only a matter of timing.

The majority's contention that the earlier judgment relates only to zoning, and not timing, overlooks the clear wording and intent of that document. A consent judgment is binding as to the issues in the stipulation. (*Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516].) This does not mean, as the majority appear to believe, that only those issues in the underlying suit may be considered. It means that all subjects covered in the judgment are settled and binding as to the parties.

Paragraph 17 of the judgment provides that the city "*shall* issue to [Pardee] *all* necessary use, building and other permits and approvals *upon* [*Pardee's*] *request* and compliance with all legal requirements . . . ." Further, paragraph 19 declares that the city shall not be precluded "in the proper exercise of its police power from adopting any ordinance . . . *so long as such ordinance is not inconsistent with the provisions of this judgment.*" (Italics added.) It is patently obvious that the ordinance, which allows the city to deny Pardee *any* building permits *until 1995,* and the judgment, which provides that Pardee is entitled to *all* building permits it requires *upon its request,* are inconsistent. It is also clear that paragraph 19 of the

judgment thus prevents the city from enforcing as to this plaintiff the very species of ordinance at issue in this case.

The majority attempt to limit the judgment to its effect on the city's power to change the zoning applicable to Pardee. But it is apparent that the judgment has a far broader purpose: i.e., to prevent the city from interfering in any significant way with Pardee's development plans. This broad purpose is manifested in paragraphs 17 and 18, which bear no relation to zoning. Paragraph 18 declares that the "City shall take no action which is inconsistent with the spirit and intent of the settlement agreement and this judgment." As quoted above, paragraph 17 requires the city to issue "all necessary use, building and other permits" to Pardee. Thus, city interference quite apart from zoning was considered by the parties and precluded by the judgment. The ordinance constitutes a direct violation of this mandate.[1]

## II. *The City's Preclusion from Interfering with Pardee's Vested Right.*

The city is precluded from applying the growth ordinance to Pardee not only by the express terms of the judgment, but also because the judgment gave Pardee a vested right to develop its property with which the city may not interfere. "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].) " '[T]he Legislature is without power to impair or destroy the obligations of contractual or vested rights . . . .' " (*Pardee Construction Co.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 471, 479 [157 Cal.Rptr. 184], quoting *Estate of Thramm* (1947) 80 Cal.App.2d 756, 765 [183 P.2d 97].)

In the past, a developer had to obtain a building permit and expend substantial sums in reliance thereon in order to invoke the vested rights doctrine. But "Several decisions intimate that a building permit may no longer be the *sine qua non* of a vested right if preliminary public permits are sufficiently definitive and manifest all final discretionary approvals required for completion of specific buildings." (*Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965, 975, fn. 5 [137 Cal.Rptr. 699].) "In determining which governmental permits other than a building permit may possibly afford the developer a vested right, some courts have

---

[1]The plaintiff does not challenge the constitutionality of the growth ordinance, except as applied. Thus I do not reach that profound issue in this proceeding.

applied the final discretionary approval test while others have disregarded whether the final act is discretionary or ministerial and simply looked to the final governmental approval." (*Tosh* v. *California Coastal Com.* (1979) 99 Cal.App.3d 388, 394 [160 Cal.Rptr. 170]; see also *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 794; *Billings* v. *California Coastal Com.* (1980) 103 Cal.App.3d 729, 735 [163 Cal.Rptr. 288]; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 841-845 [180 Cal.Rptr. 555]; *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 544 [122 Cal.Rptr. 315].)

Paragraph 17 of the judgment constitutes the city's guarantee that upon request Pardee will receive any permits—for building and all other purposes—necessary for the completion of the development. The wording of paragraph 17 makes clear the parties' intent to remove all discretion from the city by providing that the city "shall" issue all permits "upon [Pardee's] request." This guarantee—fully and fairly bargained for by parties in litigation—exemplifies governmental approval that is the equivalent of a building permit for the purpose of a vested rights inquiry. And plaintiff's good faith expenditure of over $13.5 million for onsite and offsite improvements, incurred in reliance on the judgment, finishes the inquiry. Since Pardee thus had a vested right to complete its development, the city could not interfere.[2]

The order of the trial court should have been reversed, and the cause remanded with instructions to issue the restraining order as prayed, thus preventing the application of the ordinance to Pardee.

Bird, C. J., concurred.

Appellant's petition for a rehearing was denied January 17, 1985. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[2]The city relies on the rule that "a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit" (*Avco, supra,* 17 Cal.3d at p. 795) to claim that regardless of Pardee's vested right, it must comply with the ordinance whenever it seeks a building permit. But this reliance is misplaced. The judgment here acted as the equivalent of a building permit in order to create Pardee's vested right. Thus, the relevant law is that in existence at the time the judgment was entered, seven years before the ordinance was enacted.