EDMUND G. BROWN JR. Attorney General SUSAN DUNCAN LEE Supervising Deputy Attorney General
THE HONORABLE ROBERT OWEN, CITY PROSECUTING ATTORNEY, CITY OF RIALTO, has requested an opinion on the following question:
Is Government Code section 1090 a barrier to compromise settlement by a city of a suit for damages that was brought by a city council member against the city and its employees before his election to the council, for alleged wrongful conduct committed against him as a private citizen by city employees? *Page 2 
 CONCLUSION
Although the issue is not entirely free from doubt, under the current state of the law, we conclude that a court could invalidate as contrary to state law a city's compromise settlement of a suit for damages that was brought by a city council member, before his election to the council, against the city and its employees for alleged wrongful conduct committed against him as a private citizen, because the plaintiff council member's financial interest in the settlement would be prohibited by Government Code section 1090.
 ANALYSIS
In 2002, a city resident filed a complaint for money damages in a federal district court, alleging that the City of Rialto, certain of its employees, and various county employees had violated 42 U.S.C. §§ 1983,1985(3), and 1986. Two years later, the plaintiff was elected to the city council of Rialto. We are advised that the action has been resolved as to all parties except the City of Rialto and some of its individually named employees, and we are asked whether the City may now enter into a compromise settlement of the litigation with the plaintiff council member.
Resolution of this question requires us to consider again the issue whether the law recognizes an exception to Government Code section 1090
when the contract being examined concerns resolution of litigation, this time when the suit is one for damages against both the municipality and certain of its employees.[1] Although we believe that a court could reasonably come to a contrary conclusion in this circumstance, current jurisprudence construing and applying section 1090 compels us to advise that a compromise settlement of even a damage action such as the one presented here is vulnerable to invalidation because of the plaintiff council member's financial interest in the settlement. *Page 3 
Government Code section 1090[2] prohibits public officers, acting in their official capacities, from making contracts in which they are financially interested. Section 1090 states in relevant part:
 Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members.
The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct."[3] The statute's prohibition is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety."[4] Hence, section 1090's proscription applies even when the terms of the proposed contract are demonstrably fair and equitable, or are plainly to the public entity's advantage.[5]
To the extent, then, that a public official is "financially interested" in a settlement between himself and a governmental body of which he is a member, a contract settling the litigation would be proscribed by section 1090.[6] It is immaterial that the member abstains from voting on the settlement agreement. "Mere membership on the board or council establishes the presumption that the officer participated in the forbidden transaction or influenced other members of the council."[7] Accordingly, California courts have generally held that a contract in which a public officer is interested is void, not merely voidable.[8] *Page 4 
As a general rule, an agreement to settle a lawsuit is treated as a contract.[9] Courts have also characterized stipulated judgments or consent judgments as having the attributes of contracts.[10] But no California court has squarely addressed the question whether an agreement settling a suit for damages is a contract within the compass of section 1090. Nor has any court squarely addressed the question whether settlement of litigation amounts to a "financial interest" within the meaning of that statute.
However the decision of the Court of Appeal in Santa Clara ValleyWater Dist. v. Gross,[11] though not squarely on point, is instructive. In Santa Clara, the water district initiated condemnation proceedings to purchase property owned by Gross, a member of the water district's board of directors. After trial, Gross moved for recovery of his litigation expenses, defined to mean "reasonable attorney's fees and costs, including reasonable expert witness fees and appraiser fees,"[12] but the motion was denied because Gross had not filed a pre-trial final compensation demand as required by statute. At least 20 days prior to the date of the trial on issues relating to compensation, the condemning public entity is required to serve and file its final offer of compensation, and the defendant owner is likewise required to serve and file its final demand for compensation.[13] The owner may recover litigation expenses only if his final demand was reasonable and the public entity's final offer was unreasonable.[14] *Page 5 
In this case, neither party had complied with the statutory requirement. Gross contended that the bar of section 1090 excused compliance with this procedural requirement as a precondition to recovery of litigation expenses.
Section 1090 arguably conflicted with legislative policies relating to settlement of condemnation disputes. The Legislature mandates that public entities "make every reasonable effort to acquire expeditiously real property by negotiation,"[15] in order to, among other things, "avoid litigation and relieve congestion in the courts."[16] But settlement of the litigation without trial is arguably impossible in light of the Supreme Court's ruling in Thomson v. Call.[17] Had Gross settled with the water district, he faced the prospect that the settlement would be invalidated, and he would lose not only his property but also the purchase price paid to him by the district.[18]
The Court of Appeal, however, rejected Gross's argument that section 1090 excuses compliance with the procedural prerequisites to recovery of litigation expenses in a condemnation proceeding. However, in so doing, the court also suggested that a court-supervised settlement based on the parties' final submissions would not come within Thomson:
 Once a condemnation action has been filed, . . . the property owner and his agency become adversaries, subject to the rules of court and civil procedure which govern the course of litigation. A settlement achieved pursuant to these rules can be supervised by the court and receive the imprimatur of court confirmation.
 * * * * *Page 6 
 [W]e find that the Thomson case is not applicable here where the parties have availed themselves of a court of law to effect a sale by means of condemnation. In such a case the rules of procedure which apply to all litigants apply to them as well.[19]
We do not regard the court's distinction of Thomson as dispositive. It does not necessarily follow, from the fact that section 1090 is no obstacle to compliance with the pre-trial filing procedure, that conclusion of a settlement agreement would not run afoul of section 1090. As the court itself observed, "[t]his procedure [of submitting final offers and demands to the court] is not the equivalent of negotiations between the parties."[20] Indeed, conclusion of a settlement necessarily obviates the need for trial on the amount of compensation and, perforce, the possibility of recovering litigation expenses.[21] Since the parties in Santa Clara had, in fact, engaged in little or no negotiation on the amount of compensation, the court was not presented with the question whether they could lawfully have concluded an agreed-upon settlement consistent with the strictures of section 1090; accordingly, the court's suggestion that such a settlement would not be subject to Thomson is dictum.
Although Santa Clara does not provide dispositive precedent for purposes of addressing the question presented here, the opinion does demonstrate the difficulty in reconciling the legislative policies underlying section 1090 with competing and important legislative policies favoring resolution of disputes without need of litigation. More importantly, Santa Clara demonstrates that courts may not be adverse to distinguishing a litigation settlement agreement from a contract such as the contract invalidated in Thomson if the facts and circumstances warrant such a distinction.[22]
The question before us implicates several competing and important public policies. Litigation settlements that devolve to the financial benefit of a public official have much the same potential for self-dealing and improper influence on decision-makers that exists with *Page 7 
respect to other public contracts subject to the proscription of section 1090. At the same time, suits for monetary damages, such as the civil rights action here at issue, involve asserted violations of constitutional or statutory rights that, if true, justify expeditious resolution and satisfaction.[23]
Morever, such litigation implicates other public concerns that are not present in the usual contracting context. For example, ordinarily public entities are obligated to provide a defense and to indemnify their employees who are sued in such actions.[24] This obligation of public employers reflects a legislative policy of ensuring "the zealous execution of official duties by public employees" free from the chilling effect of litigation and fear of a judgment for damages.[25] It is a policy that is furthered by expeditious settlement of claims, especially since, should the case go to trial, employees may be personally liable for any award of punitive damages.[26] And the public has an interest in settling litigation in order not to needlessly crowd the dockets of the courts.[27]
Reasonable minds may hold that the Legislature did not intend section 1090 to preclude compromise settlement of the litigation such as is described here, and, indeed, legislative clarification may be in order. But under the current state of the law, we cannot conclude that a compromise settlement of this litigation would survive collateral attack. The *Page 8 
term "contract" is broadly construed in furtherance of the purpose of section 1090,[28] a s i s t h e phrase "financial interest." Indeed, a Court of Appeal recently observed that "[t]he phrase `financially interested' broadly encompasses anything that would tie a public official's fortunes to the existence of a public contract."[29] And at a minimum, a compromise settlement agreement would reduce to zero the plaintiff's risk of loss by going to trial.[30]
In this matter, we are told that a federal district court has ordered the parties to submit settlement proposals and counter-proposals to a settlement judge, specifying that sanctions may be imposed for any failure to comply with the order.[31] There is no question that a district court has authority to require parties to participate in settlement conferences and, when appropriate, to impose sanctions on them if they fail to comply with the order. It is equally beyond question, however, that a district court does not have authority to compel the parties to enter into a settlement, nor to sanction them when they reasonably refuse to do so.[32] This circumstance is thus distinguishable from the statutory mandate at issue in Santa Clara.
Should the city here choose to enter into a compromise settlement with the plaintiff council member, even under judicial supervision, there is a risk that a state court could invalidate the settlement as a matter of state law because of the plaintiff's financial interest therein. Because enforcement of settlement agreements is generally a matter of state law,[33] *Page 9 
courts in other states have not hesitated to unsettle federal settlement agreements when they found that the agreements violated state conflict-of-interest laws.[34] The doubtful validity of such agreements, and the potential for proliferation of litigation that may result from that uncertainty, may outweigh the hoped-for efficiency of reaching an early settlement in a case such as this.
However, in any event, the parties would not be foreclosed from taking other steps toward the efficient disposition of the litigation between them; section 1090's prohibition pertains to the making ofcontracts, and not to negotiation per se.[35] For example, section 1090 would not necessarily preclude separate settlement between the council member and the individually named defendants who were sued for damages in their personal capacity, provided such settlement would not give the member a derivative financial interest in any agreement between the city and the defendant employee that was made after the member was elected to the city council.[36] Moreover, section 1090 does not prevent the parties from exploring a wide range of stipulations, agreements, or admissions that may significantly limit the issues for trial or summary judgment, nor does it prevent the parties from engaging in extrajudicial procedures to resolve their dispute, such as early neutral evaluation, mediation, or arbitration, as long as those procedures do not themselves result in a prohibited contract.
We conclude, therefore, that under current case law, a court could invalidate as contrary to state law a city's compromise settlement of a suit for damages that was brought by a city council member, before his election to the council, against the city and its *Page 10 
employees for alleged wrongful conduct committed against him as a private citizen, because the plaintiff council member's financial interest in the settlement would be prohibited by Government Code section 1090.
[1] In 86 Ops.Cal.Atty.Gen. 142 (2003), we concluded that section 1090 would bar settlement of a suit that had been filed by a board member, while holding that office, against the board of which he was a member, for the purpose of reversing an earlier board action in which he had a personal financial interest. In that case, a community services district had issued a groundwater extraction permit to the neighbor of one of the district's directors. The director opposed the decision because of the possible adverse effect that the development might have on his well water. The director did not participate in the decision to approve the permit, and then filed a lawsuit against the district to overturn the board's decision.
[2] All further references to the Government Code are by section number only.
[3] Stigall v. City of Taft, 58 Cal. 2d 565, 569 (1962).
[4] City of Imperial Beach v. Bailey, 103 Cal. App. 3d 191, 197
(1980).
[5] Thomson v. Call, 38 Cal. 3d 633, 646-649 (1985).
[6] Section 1090, therefore, would not bar settlement providing only for injunctive relief that results in no direct or indirect financial benefit to the plaintiff.
[7] Thomson, 38 Cal. 3d at 649 (citations omitted).
[8] Id. at 646 n. 15.
[9] See e.g. T. M. Cobb Co. v. Superior Court, 36 Cal. 3d 273, 280
(1984); Weddington Productions, Inc. v. Flick, 60 Cal. App. 4th 793, 810
(1998).
[10] See Pardee Construction Co. v. City of Camarillo, 37 Cal. 3d 465,471 (1984) (noting that a consent judgment is in the nature of a contract); Mendly v. County of Los Angeles, 25 Cal. App. 4th 1193, 1206
(1994) (issue before the court was not "whether we can label a consent decree as a `contract' or a `judgment,' for we can do both"); UnitedStates Capital Corp. v. Nickelberry, 120 Cal. App. 3d 864, 867 (1981) ("An action based on a judgment is an action based on contract. The judgment becomes a debt which the judgment debtor is obligated to pay and the law implies a contract on his part to pay it.")
[11] Santa Clara Water Dist. v. Gross, 200 Cal. App. 3d 1363
(1988).
[12] Code Civ. Proc. § 1250.410(e).
[13] Id. at § 1250.410(a).
[14] Id. at § 1250.410(b).
[15] Govt. Code § 7267.1(a).
[16] Govt. Code § 7267.
[17] Thomson, supra n. 5, 38 Cal. 3d 633. Thomson involved a real estate transaction in which a corporation purchased property from a city council member and then conveyed it to the city. The council member had disclosed his interest in the property and had abstained from actions relating to the acquisition. Nevertheless, the Court ruled that the council member's financial interest in the transaction rendered the conveyance void by virtue of section 1090.
[18] In Thomson, the Court had allowed the city to retain the land while requiring the financially interested council member to return the purchase price plus interest.
[19] Santa Clara, 200 Cal. App. 3d at 1369.
[20] Id. at 1370.
[21] By the terms of the statute, litigation expenses are allowable only if the parties are in substantial disagreement about the amount of compensation. Code Civ. Proc. § 1250.410(b).
[22] We have no reason to doubt, however, that a court would invalidate the settlement agreement described in86 Ops.Cal.Atty.Gen. 142, see supra n. 1. In that case, no public policy reasonably competes with the policy underlying section 1090.
[23] We have nothing before us to suggest that this litigation is other than genuinely adversarial. As the Court of Appeal suggested inSanta Clara, the policies underlying section 1090 and those favoring settlement of bona fide litigation are not necessarily "irreconcilable."200 Cal. App. 3d at 1369.
[24] Govt. Code §§ 825, 995.
[25] Johnson v. State, 69 Cal. 2d 782, 792 (1968).
[26] See Govt. Code § 825(a), (b).
[27] Neary v. Regents of the Univ. of California, 3 Cal. 4th 273, 277
(1992) (quoting Eugene F. Lynch, Douglas R. Young Stephen E. Taylor,California Negotiation and Settlement Handbook vii (Bancroft-Whitney 1991) [foreword by California Supreme Court Chief Justice Malcolm M. Lucas: "The need for settlements is greater than ever before. `Without them our system of civil adjudication would quickly break down.'"]);Wilson v. Wal-Mart Stores, Inc., 72 Cal. App. 4th 382, 390-391 (1999) ("[O]ur public policy in favor of settlement primarily is intended to reduce the burden on the limited resources of the trial courts. The trial of a lawsuit that should have been resolved through compromise and settlement uses court resources that should be reserved for the resolution of otherwise irreconcilable disputes.")
[28] See e.g. Chapman v. Superior Court, 130 Cal. App. 4th 261, 274
(2005); People v. Honig, 48 Cal. App. 4th 289, 329 (1996) (noting that definition of "making a contract" is defined broadly); cf. FontanaRedevelopment Agency v. Torres, 153 Cal. App. 4th 902, 909-911 (2007) (construing the term "contract" narrowly for purposes of validation statutes).
[29] Carson Redevelopment Agency v. Padilla, 140 Cal. App. 4th 1323,1334 (2006).
[30] Courts in other states have found litigation settlement agreements to be subject to public-officer conflict restrictions.See People v. Scharlau, 565 N.E.2d 1319 (Ill. 1990); Thompson v. City ofAtlantic City, 921 A.2d 427 (N.J. 2007).
[31] See Fed.R.Civ.P. 16.
[32] E.g. Newton v. A.C. S., Inc., 918 F.2d 1121, 1129 (3d Cir. 1990); In re Ashcroft, 888 F.2d 546, 547 (8th Cir. 1989) (per curiam);G. Heileman Brewing Co., Inc. v. Joseph Oat Corp., 871 F.2d 648, 653
(7th Cir. 1989) (en banc); Del Rio v. Northern Blower Co., 574 F.2d 23,26 (1st Cir. 1978); In re LaMarre, 494 F.2d 753, 756 (6th Cir. 1974).
[33] See, e.g. Kokkonen v. Guardian Life Ins. Co. of America,511 U.S. 375, 381-382 (1994).
[34] E.g. Thompson v. City of Atlantic City, 901 A.2d 428 (N.J.Super. App. Div. 2006) (invalidating settlement agreement reached in federal court where parties violated state conflict of interest laws);People v. Scharlau, supra n. 30, 565 N.E.2d 1319 (upholding conviction of officials for violating state conflict of interest laws in settling federal class action); but see Yaracs v. Summit Academy, 845 A.2d 203
(Pa.Commw.Ct. 2004) (state court lacked jurisdiction to vacate settlement agreement that violated state conflict of interest laws, where federal court expressly retained jurisdiction over settlement agreement).
[35] Referring to the opinion in Santa Clara, supra n. 11, our published handbook on conflicts of interest states that, "Absent [Code of Civil Procedure section 1250.410] or similar special procedures, a board may not enter into settlement negotiations with a board member with whom it is in litigation." Cal. Attorney Gen. Office, Conflicts ofInterest (2004) 73. This statement is intended to refer to negotiations that result in a contractual settlement agreement, and not to negotiations per se.
[36] Indemnification of employees is an obligation imposed by law,see Govt. Code § 995, and accordingly, section 1090 would not ordinarily be implicated by such indemnification. See Civ. Code § 1428. *Page 1