[Civ. No. 35304. First Dist., Div. Two. Feb. 6, 1976.]

JAMES J. DALE et al., Plaintiffs and Appellants, v.
CITY OF MOUNTAIN VIEW, Defendant and Respondent.

**COUNSEL**

Colin Peters for Plaintiffs and Appellants.

Bruce W. Liedstrand, City Attorney, for Defendant and Respondent.

**OPINION**

**TAYLOR, P. J.**—J. and F. Dale, the property owners, appeal from a judgment of dismissal entered after the court sustained without leave to amend[1] the general demurrer of the City of Mountain View to Dales' complaint for declaratory relief and inverse condemnation. They contend that the city's adoption of an amendment to its general plan that restricted the use of their property to "open space" constituted an

---

[1] The notice of appeal erroneously indicates that the appeal is also taken from the order sustaining the demurrer. As this order is an interlocutory one and not appealable (Code Civ. Proc., § 904.1), the purported appeal therefrom must be dismissed (*Romero* v. *Santa Clara County*, 3 Cal.App.3d 700 [83 Cal.Rptr. 758]; *Wilson* v. *Wilson*, 54 Cal.2d 264 [5 Cal.Rptr. 317, 352 P.2d 725]).

arbitrary and unconstitutional exercise of the police power, as well as improper "spot zoning," and that without compensation the city has taken and damaged their right to the use and enjoyment of their property in the sum of $1,500,000. We have concluded that there is no merit to any of these contentions, and that the judgment of dismissal must be affirmed.

Preliminarily, we set forth the well settled rules that govern a reviewing court in considering an appeal from a judgment sustaining a demurrer to a complaint. ■ The allegations of the complaint must be regarded as true. It must be assumed that plaintiff can prove all of the facts as alleged. ■ The court must in every stage of an action disregard any defect in the pleadings that does not affect the substantial rights of the parties (Code Civ. Proc., § 475). ■ Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. ■ All that is necessary as against a general demurrer is to plead facts showing that the plaintiff may be entitled to some relief (*Alcorn* v. *Anbro Engineering, Inc.,* 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]). ■ In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288-289 [295 P.2d 113]). ■ While allegations of the complaint are deemed to be true in ruling on the demurrers, where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity (*National Automobile & Cas. Ins. Co.* v. *Payne,* 261 Cal.App.2d 403, 408 [67 Cal.Rptr. 784]). ■ While a demurrer admits all material and issuable facts, properly pleaded, it does not admit contentions, deductions or conclusions of law (*Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]).

The complaint set forth the following facts: The Dales are the owners of a parcel of real property in the city, known as the "Cherry Chase Golf Course." At the time the property was incorporated into the city in 1962, it was zoned agricultural, and has been used by the Dales' tenant as a golf course under a valid conditional use permit from the city. We may take judicial notice of the fact that the property is presently used as a golf course, and is leased for this purpose until 2011.[2]

---

[2] Thus, we treat as a nullity the portion of paragraph VII of the complaint alleging that the property is unsuited for use as a golf course.

The imposition of the agricultural zoning in 1962 was a matter of convenience, recognizing the existing use at the time the property was incorporated into the city. By the terms of the agricultural classification itself, and by the contractual relations between the city and the Dales, the city recognized that the real property was suited only for eventual residential development.[3]

The public access to the neighborhood in general, and the property in question, is limited and dangerous as on two of its three sides, the neighborhood is bounded by heavily trafficked four-lane highways; the third side is bounded by the city.

The property is the privately owned land within the developed section of the city whose use is restricted to recreational or visual open space. The property is surrounded by parcels for which a higher and more intensive use is permitted. As a result, the property has been diminished to a level of not more than one-sixth of the value of the land that is contiguous to it.

Immediately adjacent to the real property to the south and southeast thereof is a parcel of 14 acres, more or less, of substantially unimproved land. The Dales are informed and believe that the parcel is owned in fee simple by the city; that the zoning applicable to this city-owned parcel allows multi-family residential units; that the zoning regulations on all property located within the neighborhood, other than the golf course, allows residential uses varying from single-family residential to a large multi-unit planned community apartment.

On February 13, 1973, Dales' application for a zoning change, presented by a development corporation to the city council of the city, was formally disapproved. On June 11, 1973, the city adopted Resolution No. 9734, Amendment No. 9, to the general plan of the city, which resolution proscribed all use of Dales' property except as open space for the purpose of providing recreational and visual relief to the citizens of the city and the surrounding communities. We may take judicial notice of the fact that pursuant to Mountain View City Code, sections 36.8.1 -35.8.3, the uses permitted in an open space[4] agricultural zone, in

---

[3] As this allegation contains legal conclusions concerning the convenience and purpose of the 1962 agricultural classification, these are not properly before us.

[4] Thus, we treat as a nullity the portion of paragraph VII of the complaint that alleges that the Dales' property is unsuited for any other agricultural use or any use permissible in conformity with the general plan of the city.

addition to agriculture, include both commercial and noncommercial recreation uses and facilities, swimming pools, golf courses, tennis courts, riding stables, kennels, veterinary clinics, animal hospitals, cemeteries, crematories, mausoleums and columbariums.

As to the first cause of action, the Dales alleged that an actual controversy has arisen and now exists between them and the city concerning their respective rights and duties under the general plan of the city and zoning ordinances that have been or may be enacted in conformity with the general plan. The general plan of the city and zoning ordinances which have been or may be enacted pursuant to that plan, are arbitrary, oppressive and discriminatory in their application so as to deny the Dales their rights under the Fifth and Fourteenth Amendments of the United States Constitution, and article I, sections 11, 13 and 14 of the California Constitution.

For their second cause of action for inverse condemnation the Dales realleged the facts as set forth above and further alleged that prior to the amendment to the general plan, the fair market value of the property was $2 million; after the amendment, it was not worth more than $500,000. The Dales have not been paid any compensation and on September 24, 1973, the city rejected their claim for $1.5 million.

As to the first cause of action for declaratory relief, our Supreme Court in *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110, said at pages 117-118 [109 Cal.Rptr. 799, 514 P.2d 111]: "We cannot discern in the foregoing allegations any concrete dispute between plaintiff and the county which admits of definitive and conclusive judicial relief. The county has taken no action with respect to plaintiff's land except to enact a general plan describing proposed streets, as required by state law. The fact that some of the proposed streets, if ultimately constructed, will cross plaintiff's property gives this plaintiff no greater right to secure a declaration as to the validity of the plan or its effect upon his land than that available to any other citizen whose property is included within the plan. The plan is by its very nature merely tentative and subject to change. Whether eventually any part of plaintiff's land will be taken for a street depends upon unpredictable future events. *If the plan is implemented by the county in the future in such manner as actually to affect plaintiff's free use of his property, the validity of the county's action may be challenged at that time.*

"The adoption of a general plan is a legislative act. Since the wisdom of the plan is within the legislative and not the judicial sphere, *a landowner may not maintain an action in declaratory relief to probe the merits of the plan absent allegation of a defect in the proceedings leading to its enactment.* [Citations.]" (Italics supplied.)

The identical reasoning applies to the amendment to the general plan adopted here. ■ As the Dales have failed to allege any defect in the proceedings leading to the adoption of the city's general plan, the city's general demurrer to the first cause of action was properly sustained pursuant to *Selby.*

Nor can we agree with the Dales' contention that the first cause of action raises any issues pertaining to the validity of the underlying zoning ordinances. In the instant case, there was no rezoning, no specific denial of any permit to the Dales that occurred after the city's adoption of amendment 9 to the general plan.[5] The city's resolution merely confirmed an existing use and zoning classification that was originally sought by the Dales. Although the Dales attempt to argue that the golf course is only an interim use, a use from 1962 to 2011, a period of 49 years can scarcely be considered "interim." Even assuming, without conceding, that their reference to the adjacent property permitting residential uses raises the ghost of an issue as to "spot zoning," *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93], is not apposite as there the surrounding industrial uses made residential use of the Skalko property impossible. Here, the surrounding residential uses do not interfere with the golf course use of the Dales' property. ■ Further, it is well settled that a diminution in value resulting from a proper exercise of the police power does not invalidate the action or require the payment of damages (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522-523, 529-535 [20 Cal.Rptr. 638, 370 P.2d 342]).

As to the second cause of action for inverse condemnation, *Selby* is also dispositive. The court said at pages 120 and 121: "The deleterious consequences of haphazard community growth in this state and the need to prevent further random development are evident to even the most casual observer. The Legislature has attempted to alleviate the problem

---

[5] The Dales' contention that Government Code section 65860 requires the city's zoning ordinances to be consistent with the general plan is entirely without merit as Government Code section 65803 exempts charter cities from chapter 4, "Zoning Regulations," of which section 65860 is a part.

by authorizing the adoption of long-range plans for orderly progress. Thus, it has provided not only for the adoption of general plans but also regional plans (§ 65060 et seq.), specific plans (§ 65450 et seq.), district plans (§ 66105 et seq.), and a comprehensive plan for the conservation of San Francisco Bay (§ 66650 et seq.). In addition, the voters recently passed an initiative measure providing the mechanism for adoption of plans to preserve and protect the state's coastline. (Pub. Resources Code, § 27000 et seq.)

"If a governmental entity and its responsible officials were held subject to a claim for inverse condemnation merely because a parcel of land was designated for potential public use on one of these several authorized plans, the process of community planning would either grind to a halt, or deteriorate to publication of vacuous generalizations regarding the future use of land. We indulge in no hyperbole to suggest that if every landowner whose property might be affected at some vague and distant future time by any of these legislatively permissible plans was entitled to bring an action in declaratory relief to obtain a judicial declaration as to the validity and potential effect of the plan upon his land, the courts of this state would be inundated with futile litigation. It is clear, under all the circumstances, that plaintiff has not stated a cause of action against the county defendants for either declaratory relief or inverse condemnation."

Also in accord is *Navajo Terminals, Inc.* v. *San Francisco Bay Conservation etc. Com.*, 46 Cal.App.3d 1 [120 Cal.Rptr. 108], wherein this court (Division Three) recently held that the adoption of a resolution "fixing and establishing within the shoreline land the boundaries of the water-oriented priority land uses" did not constitute a taking. ▉ We are, of course, aware of the modern rule that a taking does not require a physical invasion or direct legal restraint, as an undue restriction may suffice (*Candlestick Properties* v. *San Francisco Bay Conservation, etc. Com.*, 11 Cal.App.3d 557, 572 [89 Cal.Rptr. 897]). In *Candlestick, supra,* this court (Division Three) denied inverse condemnation relief, and at page 572, distinguished two of the foreign cases cited by the Dales, *Dooley* v. *Town Plan and Zoning Com.*, 151 Conn. 304 [197 A.2d 770] and *Morris County Land Improv. Co.* v. *Township of Parsippany-Troy Hills,* 40 N.J. 539 [193 A.2d 232]. *Candlestick* was cited with approval and followed by our Supreme Court in the "strikingly similar" case of *State of California* v. *Superior Court (Veta)* 12 Cal.3d 237, 252 [115 Cal.Rptr. 497, 524 P.2d 1281].

 This lack of an uncompensated taking of the Dales' property distinguishes the instant case from *Peacock* v. *Sacramento,* 271 Cal.App.2d 845 [77 Cal.Rptr. 391], and *Sneed* v. *County of Riverside,* 218 Cal.App.2d 205 [32 Cal.Rptr. 318]. Both *Peacock* and *Sneed* involved uncompensated taking of an airspace easement for public use.

As to the Dales' contention concerning their claim of a substantial dimunition of property values, *Morse* v. *County of San Luis Obispo,* 247 Cal.App.2d 600 [55 Cal.Rptr. 710], rejected an identical argument where the county refused a request for up-zoning from agricultural to residential and down-zoned the property to a lower density agricultural zone. The court noted, at page 602, that landowners have no vested rights in existing or anticipated zoning ordinances and are not entitled to reimbursement for losses due to changes in zoning. This same view was just reaffirmed by our state Supreme Court in *HFH, Ltd.* v. *Superior Court* 15 Cal.3d 508 [125 Cal.Rptr. 365, 542 P.2d 237].

Contrary to the Dales' contentions, there are no allegations to bring the instant case within *Klopping* v. *City of Whittier,* 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], which held that if a city had acted unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain proceedings or through other oppressive conduct, the owner was entitled to maintain an action in inverse condemnation. We think these factors, as well as the actual taking, distinguish the recent holdings to the contrary in *Arastra Limited Partnership* v. *City of Palo Alto* (N.D.Cal. 1975) 401 F.Supp. 962; and *Dahl* v. *City of Palo Alto* (N.D.Cal. 1974) 372 F.Supp. 647.[6]

The purported appeal from the order sustaining the demurrer is dismissed. The judgment of dismissal is affirmed.

Kane, J., and Rouse, J., concurred.

---

[6] All of these cases arose out of the rezoning of the Foothills area in Palo Alto from 1-acre minimum residential lot size to a newly created open space classification limited to a 10-acre minimum residential lot size.