[Civ. No. 44980. First Dist., Div. Two. May 23, 1980.]

MARGARITA NOGUERA et al., Plaintiffs and Appellants, v.
NORTH MONTEREY COUNTY UNIFIED SCHOOL DISTRICT
et al., Defendants and Respondents.

COUNSEL

Stewart Weinberg and Van Bourg, Allen, Weinberg & Roger for Plaintiffs and Appellants.

Iver E. Skjeie, County Counsel, and Paul R. De Lay, Deputy County Counsel, for Defendants and Respondents.

OPINION

TAYLOR, P. J.—Individually, and as a class, a group of certificated secondary level school teachers (Teachers) appeals from a judgment of dismissal after the court sustained without leave to amend the general demurrer of the North Monterey County Unified School District (Unified District) to the Teachers' petition for a writ of mandate (Code Civ. Proc., § 1085) which alleged that their services were improperly terminated in conjunction with the formation of the Unified District. We agree with the Teachers' contention that Education Code section 44902 compels a reversal of the judgment.

■ On appeal from a judgment sustaining a demurrer to a complaint, we are confronted with questions of law only and must regard the allegations of the complaint as true (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857]; *Hendrickson* v. *California Newspapers, Inc.* (1975) 48 Cal.App.3d 59 [121 Cal.Rptr. 429]; *Terry* v. *Bender* (1956) 143 Cal.App.2d 198 [300 P.2d 119]). We must also assume that the plaintiff can prove all of the facts as alleged (*Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520]). The allegations must be liberally construed with a view to attaining substantial justice

between the parties (*Glaire, supra; Dale, supra*). If, upon consideration of all the facts therein stated, it appears that the plaintiff is entitled to any judicial relief against the defendant, the complaint will withstand the demurrer (*Glaire, supra; Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 347 [157 Cal.Rptr. 791]). Matters outside the complaint must be left for a determination at trial (*Favalora* v. *County of Humboldt* (1976) 55 Cal.App.3d 969, 974 [127 Cal.Rptr. 907]; *Griffith* v. *Department of Public Works* (1956) 141 Cal.App.2d 376 [296 P.2d 838]).

The complaint alleged the following: The Teachers are all certificated by the State of California to teach or otherwise perform certificated services at the secondary level of any high school or unified school district. All were probationary employees of the Salinas Union High School District (Salinas) and were among the 50 teachers who received notice on March 10, 1978, that their services with Salinas would be terminated prior to the beginning of the next school year, 1978-1979.

On July 1, 1976, the Unified District began operation as a unified school district for students in grades K through 12. The Unified District was the successor of the North Monterey County Union School District (North Monterey), an elementary school district for students in grades K through 8. North Monterey was a component of Salinas, where its students attended any one of three high schools. As of July 1, 1976, the Unified District assumed responsibility for the high school education of its students. At that time, a three-year agreement was reached between the Unified District and Salinas. Salinas agreed to continue to provide for North Monterey students' high school education until the Unified District's high school facility was completed. It was estimated that approximately 1,400 students would eventually transfer from Salinas to the Unified District.

Near the end of school year 1977-1978, on March 10, 1978, Salinas gave notice to 50 teachers that there had been a decline in the average daily attendance (ADA) which, in the opinion of its governing board, made it necessary to decrease the certificated staff; that particular kinds of services were being reduced no later than the beginning of school year 1978-1979; and that as a result of the above decline and reductions, Salinas would have to eliminate 47.84 full-time equivalent positions (FTE). Meanwhile, the Unified District high school facility was completed and commenced high school instruction in grades 9 through 12 at the beginning of school year 1978-1979.

The Teachers requested and received hearings by Salinas pursuant to Education Code sections 44949 and 44955. After their terminations were upheld, they filed the instant petition, alleging that: 1) the decline in ADA and decision to reduce or eliminate particular services, leading to the decision to terminate their services as teachers, was caused solely by the unification; 2) the Unified District was in the process of hiring new teachers to staff the new high school and that none of the Teachers had been offered employment. ■ Teachers contend that they were entitled to employment in the Unified District since the unification resulted in the maintenance of places of employment, school services and school programs, previously performed, maintained or provided by Salinas within the meaning of Education Code section 44902, set forth below.[1] They argue that the express language of the statute applies to the instant implementation of a new high school program as the result

---

[1]"The division, uniting, unionization, *unification*, or consolidation *of any school district* or districts, or any change in school district boundaries or organization, *shall not affect the classification of certificated employees already employed by any* school district affected. *Such employees shall have the same status* with respect to their classification by the district, including time served as probationary employees of the district after the division, uniting, unionization, unification or consolidation, or change in school district boundaries or organization *as they had prior thereto. If* such division, uniting, unionization, *unification*, or consolidation, or change in school district boundaries or organization *results in the school or other place* in which any such employee is employed *being maintained by another district*, any such employee, if a permanent employee of the district which formerly maintained such school or other place of employment, *shall be employed as a permanent employee of the district which thereafter maintains the school or other place of employment*, unless such employee elects to continue in the employ of the first district. If such employee is a probationary employee of the district which formerly maintained such school or other place of employment, *he shall be employed by the district which thereafter maintains the school or other place of employment, unless* such probationary employee *is terminated* by such district pursuant to Section 44949 or 44955, and, if not so terminated, his status with respect to classification by such district shall be the same as it would have been had the school or other place of employment continued to be maintained by the district which formerly maintained it. *As used in this paragraph, 'the school or other place in which any such employee is employed'* and all references thereto, *includes, but is not limited to, the school services or school program which, as a result of any division, uniting, unionization, unification*, or consolidation of a school district, *will be provided by another district*, irrespective of whether any particular building or buildings in which such schoolwork or school program was conducted is physically located in the new district and irrespective of whether any new district resulting from such division elects to provide for the education if its pupils by contracting with another school district until such time as the new district constructs its own facilities.

"As used in the preceding paragraph of this section 'any change in school district boundaries or organization' includes, but is not limited to, the formation of a community college district which includes a high school district maintaining a community college, and the reorganization of a territory into a new different or additional high school or elementary school district or districts.

"In case the unionization, unification, uniting, or consolidation of two or more school districts results in a district in which, under the provisions of this code then in effect,

of a "unification," as defined by Education Code section 4212, likewise set forth below.[2]

The Unified District argues that section 44902 cannot be read literally, as it refers to a "definable component" and, by implication, not to generalized school services, such as those provided by the Teachers; and that, despite the unification, the Teachers have no right to be employed by the Unified District under section 44902, as no building, place of employment, program or services identifiable as to certificated staff were transferred to or assumed by the Unified District.

Education Code section 44902 provides, in pertinent part, that if a unification of a school district results in the *school or other place* in which any employee is employed being maintained by another district, then such employee, if a probationary employee, shall be offered employment by the new school district which now maintains the school or other place of employment. The new school district may terminate such probationary employees for cause under sections 44949 and 44955. The phrase "school or other place" is defined by section 44902 *as including, but not limited to,* school services or school programs which as a result of *any unification* will be provided by any other district, irrespective of whether any particular building in which these services or programs were conducted, is physically located in the new district.

The pivotal phrase is "school or other place," as defined in section 44902. The Unified District argued below that it was incumbent upon the Teachers to point to a "definable component." The trial court agreed and incorporated the argument in its ruling, which also stated that there was "no discernible intent on the part of the legislature to eliminate the requirement that the 'school,' 'place of employment,' 'school services' or 'school program' constitute a definable component." The Unified District urges that the transfer of North Monterey's students from Salinas was not such a definable component.

---

the certificated employees are entitled to probationary or permanent classification, the employees of the union, unified, or consolidated district, or of the school district formed by uniting two or more school districts shall be given such classification on the same basis as certificated employees in other districts of like average daily attendance." (Stats. 1976, ch. 1010, § 2, operative Apr. 30, 1977; italics added.)

[2]"The *formation of a unified school district* shall be *deemed a unification* of school districts *within the meaning of Sections 44902 or 87464 and 44903.*" (Stats. 1976, ch. 1010, § 2, p. 2484; italics added.)

The Unified District and the court below ignore the essential purpose of the portion of the statute here in issue, formerly Education Code section 13321. The provision is the specific statutory expression for continuing employment rights of certificated staff upon reorganization of school districts; it was designed to preserve and protect the tenure rights of certificated employees, whether permanent or probationary, affected by a unification of school districts, or any changes in school district boundaries (*Branson* v. *Board of Trustees* (1962) 205 Cal. App.2d 680, 687 [23 Cal.Rptr. 288]). There is a complete absence of any other specific express legislative intent. The facts here alleged are expressly included as one of the basic changes of circumstances described in section 44902 in which employment rights are protected.[3]

Further, the definition of "school or other place" of employment provided in section 44902 is not limited to physical premises. The definition set forth in the fifth sentence of the statute was added by the 1974 amendment to former Education Code section 13321, the predecessor of section 44902 (Stats. 1974, ch. 1377, § 1), which also substituted "shall" for "may" in the fourth sentence, and added the phrase beginning with "unless such probationary employee is terminated." The 1974 amendment stated in clear and precise language that it is not necessary that a particular building or buildings in which "such school work or school program [is] conducted [be] *physically located* in the new district" (italics added).

Also, it is logical to include within the definition of "school services" or "school program" the overall instruction of high school students. In the last clause of the 1974 amendment, the Legislature provided that the definition of "the school or other place" applied "*irrespective of whether any new district resulting from such division elects to provide for the education of its pupils by contracting with* another school district until such time as the new district constructs its own facilities" (italics added).

The above language recognized the fact that a new school district could possibly not be ready at its inception to provide all of the educa-

---

[3]We note that the Unified District's interpretation is based on a 1976 California Attorney General's opinion (letter opn., Ops. Cal. Atty. Gen. (Nov. 23, 1976) CV 76/69) which failed to cite *Branson* v. *Board of Trustees, supra*, 205 Cal.App.2d 680. An Attorney General's opinion, although entitled to "great respect," is not binding on this court (*King* v. *Central Bank, supra*, 18 Cal.3d 840; *Fremont Police Assn.* v. *City of Fremont* (1975) 48 Cal.App.3d 801 [122 Cal.Rptr. 92]).

tion it was mandated to provide to its students. Therefore, some services and programs would have to be provided by another school district until the new school district was ready. Clearly, "school services," as contemplated by the Legislature in enacting section 44902, could mean the entire educational program or any portion thereof provided by the new school district.

Section 44902 provides that a probationary employee, transferred under its terms to a newly reorganized district, shall be employed "by the district which thereafter maintains the school or other place of employment, unless such probationary employee is terminated by such district pursuant to Section 44949 or 44955 . . . ." *We think section 44902 is clear. In the instant case, the new or receiving district is reasonably held to a knowledge that a large number of Teachers, having employees' rights with said district, were bound to be released by Salinas on the transfer of 1,400 students. The situation, in itself, was such as to apprise the receiving district of this fact in sufficient time to have enabled it to initiate the notice requirements of section 44949.[4] If, in fact, the new district neglected to do so,* it is obligated to accept the probationary employees, *having the required qualifications and experience,* from the former district and employ them for a full year. When the Teachers were to be released by Salinas as a result of unification, Salinas had a duty to so inform the Unified District. Likewise, it is reasonable to imply a parallel duty on the receiving district under section 44902, *to make the necessary inquiry,* and to insure that any employees terminated by the sending district are not terminated solely as a result of the unification. Simultaneous coordination between the old and receiving district involved in the unification to ensure that the rights of certificated employees are in fact protected, is reasonable in light of the purpose of section 44902.

At the oral argument, the Unified District maintained for the first time that: 1) given the jurisdictional notice requirement of section 44949, such a simultaneous coordination was not feasible within the time frame specified; 2) given the language of section 44902, it had no "notice" that the dismissed employees were also its employees and, therefore, subject to the notice requirements. This argument ignores the clear mandate of the 1974 amendment (discussed above) of section

---

[4]The statute requires that the employee be notified no later than March 15 that notice of termination has been recommended, and no later than May 15 of the termination.

44902 which specified probationary employees of the old district *"shall be employed"* as permanent employees of the receiving district *unless* the termination procedures of section 44949 or 44955 are invoked.

We hold that the factual allegation that the Teachers' services were being terminated by Salinas because of the unification was sufficient for the purposes of section 44902. The Unified District contends that the Teachers here involved were the most junior members of the Salinas staff and may not meet the requirements of the Unified District. Section 44902 does not contemplate the employment by the receiving district of dismissed teachers whose teaching experience and qualifications do not meet the requirements of the receiving district's new program. The statute creates a priority for employment with the receiving district for employees dismissed by the old district. These matters and others urged by the Unified District are questions of fact to be determined at the trial on the merits. We envision that the determination of the specific factual issues will alleviate some of the burden on the Unified District for its failure to comply with the mandate of section 44902.

While not raised by the parties,[5] we note that as a separate ground for the demurrer, the Unified District alleged a jurisdictional defect, namely, that the Teachers had failed to join indispensable parties, i.e., the persons newly employed by the Unified District under written contracts to perform services during the school year 1978-1979. █ If a complaint is insufficient on any ground properly specified in a demurrer, an order sustaining the demurrer must be upheld, even though the particular ground upon which the court sustained it may be untenable (*Air Quality Products, supra*, 96 Cal.App.3d, p. 348). █ As we recently said in *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, at page 500 [157 Cal.Rptr. 190]: "Failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand. It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal. App.3d 354, 364 . . . .)"

---

[5]We are at liberty to consider, and even to decide, a case upon any points that its proper disposition may seem to require, whether taken by counsel or not (*Stevenson* v. *Turner* (1979) 94 Cal.App.3d 315, 318-319 [156 Cal.Rptr. 499]).

Here, the allegedly "indispensable" parties were subject to jurisdiction of the court and should be considered "necessary but not indispensable" parties. They are not indispensable to the disposition of the case against the parties before the court, although they are necessary in the sense that the main issue affects their own interests. Thus, we see the defect as a mere failure to join such a "necessary but not indispensable" party. The more efficient and less harsh procedure would be for the court to order their joinder (Code Civ. Proc., § 389, subd. (a); *Vanoni* v. *County of Sonoma* (1974) 40 Cal.App.3d 743, 747 [115 Cal.Rptr. 485]).

The judgment is reversed.

Miller, J., and Smith, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 16, 1980.